**$22,922.00, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00747–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

March 25, 1993.

Rehearing Denied April 22, 1993.

Herb H. Ritchie, Houston, for appellant.

Kimberly Aperauch Stelter, Houston, for appellee.

Before ROBERTSON, CANNON and BOWERS, JJ.

### CORRECTED OPINION

CANNON, Justice.

This is an appeal of a judgment of forfeiture. Claimant Ronald L. Richardson complains that there was no evidence or insufficient evidence that $22,922 seized by police was proceeds gained from the commission of a felony under the Texas Controlled Substances Act. We affirm.

In response to reports of marihuana sales, Officers Beasley and Brooks set up surveillance of a scrap metal business. Brooks hid in an overgrown lot across the street and spied with a telescope. He was within earshot. Beasley parked in a marked patrol car a short distance away.

Chester Carthan was sitting on a chair just inside a metal building. Clifford Brown drove up and asked for a nickel bag of weed. Brown handed Carthan a single bill of unknown denomination. Richardson then appeared and handed Carthan a small pink envelope. Carthan passed the envelope to Brown and the bill to Richardson. Brown drove off but was stopped by Officer Beasley. Police found on Brown a pink envelope containing a small amount of marihuana.

Meanwhile, Richardson mounted a bicycle and exited the driveway. He went only twenty feet before turning back. Carthan closed the gate behind Richardson and said, "The cops are up the street." Richardson entered the metal building. He left carrying a large, brown paper sack which he took to a truck parked across the street, only a few feet from where Officer Brooks hid. Richardson spotted Officer Brooks, froze for a moment, and then tossed the sack into the truck. Police arrested Richardson.

The sack was bushel-size with a tear in the side from which money protruded. The bag contained $20,985. The police seized the money and $1,937 found on Richardson's person. The $22,922 total is the subject of the forfeiture action.

Richardson or Brown gave written consent to search the building. Police searched the trunk of a Ford Granada, one of several vehicles inside the building. The owner of the Granada was unknown, but police got a key from Richardson. Inside the trunk was a suitcase containing eight gallon-size ziploc baggies; a pair of scissors; three dust masks; a large quantity of small ziploc bags; a metal crack pipe; two spoons with white residue; three syringes; and one bottle cap. A drug dog alerted on the trunk, and later chemical analysis revealed that seven of the eight large baggies contained marihuana residue. Also, the crack pipe contained cocaine residue; the spoons, cocaine and heroin; and the bottle cap, heroin. The drug dog alerted on the sack of money which had been placed in a ditch to provide the dog with a drug-neutral setting.

Police charged Richardson with misdemeanor delivery of marihuana without remuneration. They also seized the $22,922.

In point of error one, Richardson complains that there is no evidence to support the finding that the $22,922 was proceeds gained from the commission of a felony

under the Texas Controlled Substances Act.

■ A forfeiture proceeding under the forfeiture of contraband statute is a civil proceeding. TEX.CODE CRIM.PROC.ANN. art. 59.05(b) (Vernon Supp.1993). The State has the burden to prove by a preponderance of the evidence that the property is subject to forfeiture *Id.* The State must prove that, considering all the evidence, it was more reasonably probable than not that the seized money was either intended for use in, or derived from, a violation of one of the offenses enumerated in the forfeiture statute. *See Money of the U.S. in the Amount of $8,500.00 v. State,* 774 S.W.2d 788, 792 (Tex.App.—Houston [14th Dist.] 1989, no writ). One category of offenses included in the forfeiture statute are violations of the Texas Controlled Substances Act. TEX.CODE CRIM.PROC.ANN. art. 59.01(2)(B)(i), (C) (Vernon Supp.1993); TEX. HEALTH & SAFETY CODE ANN. § 481.001 *et seq.* (Vernon 1992 & Supp.1993). The State's proof must raise more than a mere surmise or suspicion but need not exclude every other possible use or source of the money. *See $8,500.00, supra* at 792. The court may draw any and all inferences reasonably capable of being drawn from the circumstances shown in evidence. *Three Thousand Four Hundred Fifty Dollars in U.S. Currency v. State,* 743 S.W.2d 759, 762 (Tex.App.—El Paso 1988, writ denied).

■ In our review of a no evidence point of error, we consider only the evidence and inferences tending to support the trial court's judgment and disregard all evidence and inferences to the contrary. *State v. $11,014.00,* 820 S.W.2d 783, 784 (Tex.1991). If there is any evidence of probative value to support the judgment, the no evidence challenge fails. *See id.* at 785.

■ The evidence tending to support the judgment follows: (1) Police saw Richardson sell a misdemeanor amount of marihuana to Brown; (2) Shortly after learning that police were nearby, Richardson tried to leave with a torn paper sack containing an inordinately large sum of money; (3) A drug dog alerted on the sack of money; (4) The dog also alerted on the trunk of a car

on Richardson's business premises; (5) Richardson had a key to that trunk; (6) In the trunk, police found evidence of marihuana trafficking, i.e., scissors used to cut marihuana leaves, dust masks for use when cutting and packaging, gallon-size baggies typically used to store one-pound quantities of marihuana, and a large supply of small baggies for distributing/retailing smaller amounts; and (7) During the two to three hours of police surveillance and on-scene presence, police saw no scrap metal transactions.

We find that this evidence is some evidence of probative value from which the trial court could infer that the $22,922 derived from a felony offense violative of the Texas Controlled Substances Act, e.g., delivery of more than one-fourth ounce of marihuana and/or possession of more than four ounces. *See* TEX.HEALTH & SAFETY CODE ANN. §§ 481.120(b)(3), 481.121(b)(3) (Vernon 1992). We overrule point one.

In point two, Richardson complains that, even if there is some evidence, it is insufficient.

■ In our review of an insufficiency of evidence point, we consider and weigh all the evidence, including evidence contrary to the trial court's judgment. *$8,500, supra* at 792. We will set aside the judgment only if the evidence is so weak or the judgment so against the great weight and preponderance of the evidence as to be manifestly unfair or unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Under point one, we reviewed the evidence favorable to the judgment. We now survey and evaluate the contrary evidence.

■ Richardson was arrested and charged only with a misdemeanor. No charges, much less felony charges, were ever brought in connection with the alleged trafficking evidence. The amounts of residue testing positive for marihuana were measured in milligrams—too small for felony possession. But, the forfeiture statute does not require conviction for an underlying felony. TEX.CODE CRIM.PROC.ANN. art. 59.05(d) (Vernon Supp.1993). The forfei-

ture statute was designed to facilitate the forfeiture of assets used by perpetrators of felonious offenses including drug dealers. *See One 1980 Pontiac v. State,* 707 S.W.2d 881, 882–83 (Tex.1986). The State need only prove by a preponderance of the evidence that the seized money was derived from a felonious offense. Therefore, the fact that Richardson was not charged with a felony or that the amounts of marihuana found were below felony amounts is not dispositive.

Richardson asserts that there was no evidence regarding who owned the Ford Granada or the paraphernalia in it. Yet, the car was located inside Richardson's business premises, and he had a key to the trunk.

Police arrested Richardson and seized the money at his place of business. Police saw sacks of aluminum cans on the premises indicating scrap metal business activity. Richardson contends that the testimony that police saw no scrap metal transactions was meaningless because of the very short surveillance period. He also notes that the police did testify that they saw cars coming and going and that they could not see what transactions took place. Nevertheless, legitimate business transactions and illicit activity are not mutually exclusive.

Richardson claims that there was no factual basis to conclude that the specific $22,-922 was derived from drug activity. He asserts that there was no evidence regarding where the sack had been prior to its being in the building. He further contends that the dog alert on the sack yielded no evidence on whether a felony or misdemeanor quantity of drugs was involved. The dog could have alerted on the sack, money, or both. Still, the drug dog did alert. There was testimony that the police officer who handled the money sack had not touched any drug paraphernalia before the dog alert on the sack. Police testified that it would have taken more than a few tainted bills or contact with Richardson's hand to so contaminate the sack that the dog would alert from the distance that it did. In any event, probable cause of a felony does not arise solely from the dog

alert, but rather, from the total pattern of circumstantial evidence including the evidence of large-scale drug trafficking. The issue is not whether there are alternative hypothetical sources for the money, but whether the most probable source of the money is drug dealing.

Richardson points out that police found no drugs on his person or in his truck. However, police did see Richardson execute a misdemeanor sale of marihuana and found marihuana-tainted ziploc baggies among the trafficking evidence in the car trunk. A drug dog alerted on the sack of money that Richardson carried out of his business premises and put in the truck.

The State admitted that there was no nexus between the seized money and the misdemeanor for which Richardson was charged. He contends that this admission is inconsistent with there being a nexus between the money and some uncharged greater offense. But a nexus between the particular currency used in the witnessed misdemeanor marihuana sale and the seized sack of money is not a necessary condition for the existence of a nexus between the money and other offenses. Moreover, the forfeiture does not directly depend on the misdemeanor offense. The misdemeanor delivery is important only as one element in the pattern of circumstantial evidence of drug trafficking.

In essence, Richardson argues that, at best, the circumstantial evidence establishes that the money was derived from the scrap metal business or misdemeanor sales of marihuana. He asserts that, even if it were equally probable that the money did derive from felonious activity, when circumstances are consistent with more than one set of facts and nothing shows that one set is more probable than another, then no set of facts can be inferred. *See Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State,* 730 S.W.2d 659, 662 (Tex.1987).

However, we find that the trial court could have concluded from the evidence that Richardson's suggested alternatives were not equally probable with the drug trafficking scenario. We find that the evi-

dence was not so weak that it was manifestly unjust or unfair for the trial court to find that it was more likely than not that the $22,922 was derived from marihuana trafficking involving felony offenses under the Texas Controlled Substances Act, e.g., delivery of over one-fourth ounce of marihuana and/or possession of over four ounces. *See supra* §§ 481.120(b)(3), 481.-121(b)(3).

Richardson cites several cases to show that the State did not prove a nexus between the seized money and a felony. However, these cases are distinguishable. In *Fifty–Six Thousand Seven Hundred Dollars in U.S. Currency v. State, supra,* the court found no nexus. However, unlike the case at bar, there was no evidence that the money was contaminated with narcotics residue. Nor did the police witness a drug deal. Moreover, there was testimony of a reasonable explanation that the seized money was being held to pay sub-contractors and suppliers of a Mexican construction project. *Id.* In *$11,014.00 v. State,* 828 S.W.2d 814 (Tex.App.—Houston [1st Dist.] 1992, no writ), the court found no nexus. But, there, the defendant affirmatively testified that the seized money was to be used to pay for a used van. The police saw no exchange of narcotics for money, no narcotics were found in defendant's possession, and there was conflicting evidence on whether a drug dog ever alerted on the money. *Id.* at 815. In *$2067 in U.S. Currency, 3 Handguns and 51 Capsules v. State,* 745 S.W.2d 109 (Tex.App.—Fort Worth 1988), no writ), the court held that the mere fact of finding money at or near a controlled substance did not establish a nexus. *Id.* at 111. But, police did not witness any drug deal. *Id.* In *Henderson v. State,* 669 S.W.2d 385 (Tex. App.—San Antonio 1984, no writ), the court found no nexus. But, once again, police did not actually see a drug transaction. *Id.* at 387.

In sum, the present case is distinguishable from each of the cited cases on at least one of the following points: (1) Richardson presented no evidence of any alternate source for the money, much less a reasonable explanation; (2) Police actually saw Richardson participate in a marihuana sale on his business premises; (3) There was evidence of tainted money; and (4) There was evidence of large-scale trafficking.

Finding the evidence sufficient, we overrule point two. There being no reversible error, we affirm the judgment below.

BOWERS, Justice, dissenting.

I respectfully dissent. I would grant appellant's motion for rehearing.

The majority's opinion is contrary to *One 1985 Chevrolet v. The State of Texas,* 852 S.W.2d 932 (Tex.1993). The State did not allege any felony; therefore, the guidelines enunciated in *One 1985 Chevrolet* are impossible to follow. If the State can not allege "which" felony was committed, how can the State assert that "a" felony was committed? This court is unable to make a determination as to whether or not "a" felony was completed.

Property that is contraband is subject to seizure and forfeiture. TEX.CODE CRIM. PROC.ANN. art. 59.02 (Vernon Supp.1993). "Contraband" means property that is used or intended to be used in the commission of a felony. *Id.* art. 59.01(2)(A), (B).

Richardson was arrested for a misdemeanor offense, delivery of marihuana. He was charged with delivery, without remuneration, of less than one-fourth ounce of marihuana, also a misdemeanor. Richardson was not charged with any felony offense. The statute does not require a *final conviction* of an underlying felony. *Id.* art. 59.05(d) (emphasis added). I believe, however, that the State, at a minimum, should be required to present an indictment or some notice as to what the underlying felony is that justifies seizure of a person's property.

The State must establish a link or nexus between the property to be forfeited and the statutorily defined criminal activity. *Money of the U.S. $8,5000.00 v. State,* 774 S.W.2d 788 (Tex.App.—Houston [14th Dist.] 1989, no writ). The State could not even establish a nexus between the proper-

ty seized and the misdemeanor offense. The State has clearly failed to establish a nexus between the $22,922.00 seized and any felony.

Richardson had no drugs on his person or in his vehicle when he was arrested. The seizure of the currency occurred at Richardson's place of business, a scrap metal business. There was no evidence as to whom the automobile or the narcotics paraphernalia found in the automobile belonged to and no charges were ever filed in connection with these items.

There is no evidence that the currency transferred in the observed misdemeanor marihuana delivery was among the currency seized. Although the dog alerted on the paper sack, there was no evidence as to whether the dog was alerting to the sack, all or part of the money, or both the sack and money.

The officers testified that they did not observe any scrap metal transactions during their limited periods of surveillance. They did testify, however, that they observed cars entering and leaving the business and did not know what kind of business was being transacted. Upon entering the building, the officers saw evidence associated with the scrap metal business.

The ziploc bags were never connected to Richardson or the currency seized. The residue of marihuana found in the bags was milligram amounts. Whether the bags were ever full, half full, or barely used for marihuana is unknown. One officer testified he did not have any facts that the money seized from Richardson came from illegal trafficking and narcotics.

The State's attempted connection between the seized property and some unnamed felony is so weak as to be manifestly erroneous and unjust. The State showed, at the most, that Richardson delivered a small misdemeanor amount of marihuana and then later attempted to remove a sack of money from his premises. There is no nexus between this money and a felony.

I would reverse the trial court's judgment.